IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ALEXANDER STROSS,
        Plaintiff,
-vs-

EUGENE ROWEHL and CENTERRA
HOMES OF TEXAS, LLC,
        Defendants.

CAUSE NO.:
AU-17-CA-00676-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Eugene Rowehl and Centerra Homes of Texas, LLC (collectively, Centerra)'s Motion for Summary Judgment [#49], Plaintiff Alexander Stross's Response and Cross-Motion for Summary Judgment [#52] in opposition, and Centerra's Reply [#54] in support. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This copyright lawsuit revolves around the ownership of photographs uploaded by Stross to the Austin/Central Texas Realty Information Service (ACTRIS) and later used by Centerra, a homebuilder, to market various real estate properties. ACTRIS is a multiple listing service (MLS) accessed over the internet and used by real estate professionals to upload, search, and disseminate real estate listings. Stross has been a participant in ACTRIS since 2006. Mot. Summ. J. [#49] at 4.[1]

Normally, in order to gain access to ACTRIS, would-be participants must complete a registration process and agree to abide by the ACTRIS "Terms of Use." *Id.* at 4–5. When signing

---

[1] In the interest of consistency, all page citations refer to CM/ECF pagination.

1

up for an online ACTRIS account, these registrants are presented with an electronic copy of the Terms of Use which they are required to read. *Id.* After they have read the Terms of Use, registrants manifest assent by clicking an "I Agree" button on an ACTRIS web page. *Id.*

The parties dispute whether Stross ever agreed to the ACTRIS Terms of Use. Though there is no record of Stross agreeing to the Terms of Use, Centerra argues Stross must have agreed to the Terms of Use because he could not otherwise have completed the registration process or began to use his ACTRIS account. *See* Reply [#54-1] Ex. A at 14 ("[Each] member record has an MLS Flag Yes/No Field. And if that doesn't have a positive Y value, then . . . [he] would not have been authenticated [to use the system]."). For his part, Stross contends there was a problem with the ACTRIS online registration process when he attempted to register in 2006, and he was instead provided with a paper application and log-in credentials. Resp. [#52-1] Stross Decl. at 1. Stross states this paper application did not contain the Terms of Use. *Id.*

The Terms of Use contain two provisions relevant to the pending motion. First, they contain an assignment provision which states that participants who submit content to ACTRIS "thereby assign to ACTRIS" all rights and interest in the content, "including, without limitation, any photos." Mot. Summ. J. [#49-4] Ex. 2-A (Terms of Use) at 3. Second, the Terms of Use contain a choice of law provision which states that in the event of an "unavoidable conflict" between the Terms of Use and the ACTRIS Rules and Regulations, "the Rules and Regulations shall control." *Id.* at 3.

The ACTRIS Rules and Regulations, in turn, contain two relevant provisions. First, Section 7.10 states that participants who submit content to ACTRIS grant ACTRIS an irrevocable right and license to include such content "in the MLS Compilation" and to use such content "for any purpose consistent with the facilitation of the sale, lease and valuation of real

2

property or such other use." Resp. [#52-2] McKinney Decl. at 67 (Rules and Regulations). Second, Section 7.11 states ACTRIS "shall own all right, title, and interest in the MLS Compilation, including all intellectual property rights." *Id.*

In January and February 2015, Stross took photographs of several homes built by Centerra and uploaded these photographs to ACTRIS for incorporation into a real estate listing managed by a third party. Second Am. Compl. [#30] at 2. Shortly thereafter, however, Centerra decided to sell the homes itself, and on February 10, 2015, Stross removed the photographs from ACTRIS. *Id.*

Some time later, Stross discovered his photographs had been uploaded to Centerra's website for marketing purposes and incorporated into sales flyers distributed by Centerra. *Id.* at 4–5. Centerra did not seek Stross's permission to use the photographs nor did it compensate Stross in any way. *Id.*

In July 2017, Stross brought this lawsuit alleging Centerra infringed upon his copyrights in the photographs by copying, distributing, and displaying the photographs without Stross's consent. Second Am. Compl. [#30] at 7–9. Centerra now brings a motion for summary judgment arguing Stross lacks standing to bring his copyright claims because he assigned all of his rights in the photographs to ACTRIS when he allegedly agreed to the ACTRIS Terms of Use. Mot. Summ. J. [#49] at 3–5. In response, Stross has brought a cross motion for summary judgment asking the Court to rule Stross owns the copyrights in question as a matter of law. Resp. [#52] at 14. These pending motions are ripe for review.

## Analysis

### I. Summary Judgment Standard

3

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the

court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Centerra's Motion for Summary Judgment

Centerra argues Stross lacks standing to bring his copyright claims because he assigned all of his rights in the photographs to ACTRIS when he allegedly agreed to the Terms of Use. Mot. Summ. J. [#49] at 4–5. In response, Stross contends he never agreed to the Terms of Use. Resp. [#52] at 5. Stross also contends the Terms of Use could not have effected an assignment in the first place. *Id.* at 12–13. According to Stross, there is a conflict between the Terms of Use and the Rules and Regulations because the former purports to effect an assignment while the latter effects only a license. *Id.* And under the choice of law provision contained within the Terms of Use, the Rules and Regulations control in the event of conflict between the Terms of Use and the Rules and Regulations. *Id.*

The Court need not decide whether Stross ever accepted the ACTRIS Terms of Use because the Court concludes the assignment provision within the Terms of Use conflicts with Section 7.10 of the ACTRIS Rules and Regulations. The Terms of Use provide that ACTRIS users assign all rights in submitted content to ACTRIS. Terms of Use at 3. Meanwhile, Section 7.10 of the Rules and Regulations provides that users who submit content merely grant ACTRIS

an irrevocable right and license to include such content "in the MLS Compilation" and to use such content "for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other use." Rules and Regulations. The Court concludes the assignment provision of the Terms of Use is in "unavoidable conflict" with the license provision of the Rules and Regulations in effect when Stross uploaded his photographs to ACTRIS. Thus, under the choice of law provision contained within the Terms of Use, Section 7.10 of the Rules and Regulations controls, and Stross retained ownership rights in his photographs.

Centerra protests that no unavoidable conflict exists because the Rules and Regulations also contain an assignment provision, Section 7.11, which provides ACTRIS "shall own all right, title, and interest in the MLS Compilation, including all intellectual property rights." Reply [#54] at 10–11. Rules and Regulations. This argument fails for several reasons. First, Section 7.11 makes no mention of assignment. *See id.* Second, Section 7.11 concerns ACTRIS's ownership of the MLS Compilation itself, not the content submitted by ACTRIS users. Under 17 U.S.C. § 201(c), "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole," and "the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work." Third, the Austin Board of Realtors—of which ACTRIS is a wholly owned subsidiary—has previously indicated that the Rules and Regulations do not require users to assign their rights in submitted content. Resp. [#52-2] McKinney Decl. at 60 (Austin Board of Realtors Meeting Agenda) (noting ACTRIS had been "operating with conflicting rules and terms of use" because the Rules and Regulations grant "a broad license" while the Terms of Use "contained an absolute assignment of ownership"). In sum, Section 7.11 is not an assignment provision and has no bearing on the matter at issue here.

Because Centerra has failed to show Stross lacks ownership over the photographs, its standing challenge fails. The Court therefore denies Centerra's motion for summary judgment.

### III. Stross's Motions for Summary Judgment

In his response, Stross has included a cross-motion for partial summary judgment arguing there is no genuine dispute of material fact that Stross owns the photograph copyrights and that Stross has standing to bring this suit. Resp. [#52] at 14. The Court denies Stross's motion for partial summary judgment on the ground Stross has presented no argument with respect to his summary judgment motion and has failed to carry his burden of demonstrating the absence of a genuine dispute of material fact.

### Conclusion

The Court denies Centerra's motion for summary judgment for lack of standing and concludes Stross did not assign his rights in his photographs by uploading them to ACTRIS. Further, the Court denies Stross's motion for summary judgment on the ground Stross has failed to demonstrate the absence of a genuine dispute of material fact.

Accordingly,

IT IS ORDERED that Centerra's Motion for Summary Judgment [#49] is DENIED;

IT IS FURTHER ORDERED that Stross's Cross Motion for Summary Judgment [#52] is DENIED; and

IT IS FINALLY ORDERED that Stross's Motion for Leave to File Surreply [#55] is DISMISSED AS MOOT.

SIGNED this the 17th day of September 2018.

SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE