UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ALEXANDER STROSS | : |
| Plaintiff, | : CIVIL ACTION #  1:17-cv-676 |
| vs. | : |
| CENTERRA HOMES OF TEXAS, LLC & EUGENE ROWEHL | : JURY DEMANDED |
| Defendants | : |

### ALEXANDER STROSS'S OPPOSED MOTION TO EXCLUDE THE EXPERT TESTIMONY OF RICK ALBERS

Plaintiff Alexander Stross ("Stross") files this motion to exclude the expert testimony of Rick Albers, and respectfully shows the Court the following:

## I. INTRODUCTION

In support of its counterclaim/third party claim for breach of fiduciary duty, Defendants have tendered the proposed expert testimony of Rick Albers. *See* **Exhibit A**. Albers is a lawyer who claims to have experience in real estate. Albers relies on his purported expertise to offer improper legal conclusions regarding the meaning of various statutes, the existence or non-existence of fiduciary duties, and whether Plaintiff and Third Party Defendants Murphy Stross Investments, LLC ("MSI") and Brittany Murphy ("Murphy") breached fiduciary duties allegedly owed to Defendants. In addition to the improper nature of Albers' testimony, his conclusions are predicated on insufficient facts and data, and he has failed to adequately account for alternative explanations. As explained below, Albers' purported expert testimony is improper and unreliable and should be excluded.

1

## II.  ARGUMENT

The party offering expert testimony bears the burden of proving admissibility by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). Motions to exclude are subject to the Court's discretion. *See Wilson v. Woods*, 163 F.3d 935, 936 (5th Cir. 1999). Pursuant to FRE 104(a), it is the role of this Court to determine "any preliminary question about whether a witness is qualified . . . or evidence is admissible."

Expert testimony must be relevant and reliable under FRE 702. *See Daubert*, 509 U.S. at 592. Pursuant to FRE 702, expert testimony is admissible only if (1) the expert is qualified "by knowledge, skill, experience, training, or education;" (2) "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;" (3) "the testimony is based on sufficient facts or data;" (4) "the testimony is the product of reliable principles and methods;" and (5) "the expert has reliably applied the principles and methods to the facts of the case." *Id*. An expert's opinion must be limited to the expert's field of expertise. Fed. R. Evid. 702; *Amin-Akbari v. City of Austin*, Tex., 52 F. Supp. 3d 830, 846 (W.D. Tex. 2014). The Federal Rules do not permit an expert to testify regarding legal conclusions. *Stallion Heavy Haulers, LP v. Lincoln Gen. Ins. Co.*, No. SA-09-CA-0317-FB, 2011 U.S. Dist. LEXIS 3322, at *4-6 (W.D. Tex. Jan. 13, 2011).

**A.  Albers' Legal Conclusions Are Inadmissible.**

Although Albers purports to offer expert opinions, the majority of his report consists of legal conclusions. These conclusions are improper, and should be excluded.

Albers' improper legal conclusions include the following:

(1) That a builder's in–house salesperson is subject to the requirements of the Texas Real Estate License Act ("TRELA"). *Id*. at 4.

(2) That the act of entering a listing into the MLS creates a principal-agent relationship between a broker and a property owner, even if there was no prior relationship. *Id*.

(3) That the act of entering a listing into the MLS meets the statutory definition of duties performed by "brokers" and "agents" under Texas law. *Id*. at 4-5.

(4) That Stross was acting as Centerra's broker, subject to the provisions of TRELA, by merely listing Centerra's property for sale in the MLS.[1] *Id*. at 5.

(5) That Murphy was acting as Centerra's broker, subject to the provisions of TRELS, by merely listing Centerra's property for sale in the MLS. *Id*.

(6) That Stross was performing "broker actions" by uploading pictures to the MLS. *Id*.

(7) That a written listing agreement is not needed to establish a broker-client and/or agent-client relationship. *Id*.

(8) That a broker-client and/or agent-client relationship was created by the act of uploading pictures to the MLS, and intending that they be published to others. *Id*.

(9) That the relationship between Stross and Centerra was governed by TRELA and the Rules of the Texas Real Estate Commission set forth in Title 22 of the Texas Administrative Code ("TREC Rules"). *Id*.

(10) That the relationship between Stross and Centerra was a "fiduciary relationship." *Id*. at 6.

---

[1] This improper legal conclusion also incorrectly assumes that Stross listed the property in the MLS – a conclusion for which Albers provides no evidentiary support.

(11) That brokers, designated officers and salespersons all owe a fiduciary duty to their clients. *Id*.

(12) That Stross, Murphy and MSI were legally required to put the interests of Centerra above their own interests.

(13) That Stross breached his fiduciary duties to Centerra by:

(a) Failing to act with integrity when he asserted his copyrights against Centerra, and failed to inform Centerra that its rights to use his photographs were limited; *Id*.

(b) Engaging in self-dealing by taking photographs and retaining a claim of ownership; *Id*.

(c) Failing to make full disclosure of the terms related to his agreement to photograph the houses; *Id*. at 7.

(d) Violating his duty of loyalty by suing Centerra for copyright infringement; *Id*.

(e) Violating his fiduciary duty of good faith by suing Centerra for copyright infringement; *Id*.

(f) Violating his duty to act honestly and with candor by failing to enter into a written agreement restricting Centerra's use of the photographs. *Id*.

(14) That Murphy breached her fiduciary duties to Centerra by:

(a) Failing to act with integrity by operating in conjunction with Stross to "set-up" Centerra for claims by Stross of copyright infringement.[2] *Id*. at 7-8.

---

[2] Critically, Albers fails to identify any evidence whatsoever suggesting a pre-designed conspiracy to "set-up" Centerra. In this instance, Albers isn't offering testimony that will help the jury determine a disputed fact issue, instead he is asserting as "fact" allegations that have no evidentiary support.

(b) Failing to act with honesty and with candor by falsely stating that she had paid Stross; *Id*. at 8.

(c) Failing to make full disclosure that there was any limitation on Centerra's right to use the photographs at issue; *Id*.

(d) Violating her duty of loyalty by arranging to have Stross photograph the homes. *Id*.

(15) That Centerra's legal fees and efforts in this litigation constitute "damages" sufficient to establish a breach of fiduciary duty. *Id*.

Determining the meaning of statutes, and whether they govern the conduct of the parties, is within the province of this Court, not Mr. Albers. *See, e.g., Ross v. Noble Drilling Corp.*, No. 03-0015, 2004 U.S. Dist. LEXIS 8500, at *5 (E.D. La. May 11, 2004) (striking expert's conclusion that activity violated a duty imposed by statute); *CFM Communications, LLC v. MITTS Telecasting Co.*, 424 F. Supp. 2d 1229, 1234 (E.D. Cal. 2005) ("The meaning of federal regulations is a question of law, not a question of fact."), citing *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994); *George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2d 928, 932 (N.D. Ill. 2011) ("Put simply, expert opinions that seek to define the meaning of statutes are disallowed under the Federal Rules of Evidence."); *Burkhart v. Wash. Metro. Area Transit Auth.*, 324 U.S. App. D.C. 241, 112 F.3d 1207, 1213 (1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."). In this case Albers is purporting to define the meaning of TRELA and the TREC statutes for the jury. That is not permissible.

Likewise, Albers' purported opinion that Stross, Murphy and MSI owed, and breached, various fiduciary duties to Centerra is clearly the province of the court and jury – *not* Albers. *See*

*Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (upholding the exclusion of an attorney expert who sought to testify about whether the officers and directors in the case breached their fiduciary duties); see also *Texas Peace Officers v. City of Dallas*, No. 94-10769, 1995 U.S. App. LEXIS 42798, at *3 (5th Cir. May 31, 1995) (excluding expert testimony that was "merely giving the jury his view of how its verdict should read."). The Fifth Circuit has explained the policy behind this limitation as follows: "if an expert were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position . . . confusing the jury." *Askanase*, 130 F.3d at 673.  Albers' efforts to "tell the trier of fact what to decide" are improper, and his testimony on these issues should be excluded. *Id*.

Finally, in addition to constituting improper legal conclusions, many of Albers' "opinions" are nothing more than his personal appreciation of alleged facts – including his bald conclusion that Stross breached a duty of loyalty by suing Centerra for copyright infringement, or that Stross engaged in self-dealing by taking photographs and retaining a claim of ownership. "[E]xpert testimony offering nothing but the expert's appreciation of the facts is … inadmissible because 'the jury could adeptly assess [the] situation using only their common experience and knowledge.'" *Ross*, 2004 U.S. Dist. LEXIS 8500, at *5 (quoting *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990)).

B.     **Albers' Opinions are not based on Sufficient Facts and Data**

Albers' opinions are also unreliable because they are not based on sufficient facts and data. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chicago N.W. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996) ("an expert's opinion should be excluded if it 'is so fundamentally unsupported that it can offer no assistance to the jury.'"); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007).  For instance, Albers' opinion that Stross

breached his fiduciary duties to Centerra is predicated on the conclusion that Centerra didn't understand that it needed Stross' authorization to use the photographs after it removed Murphy as sales agent. *Id*. at 6-8. Albers draws this conclusion despite never having spoken to Centerra's employee Murphy – who negotiated the terms with Stross, and understood them very well. He also is either unaware of, or ignores, critical evidence, such as (1) that Murphy disclosed the terms of her agreement with Stross to Centerra's President Tom Grant (including the condition that she sell the homes, and pay Stross out of her proceeds),[3] (2) that Centerra removed Murphy as sales manager for the homes days later, eliminating the express condition that Murphy sell the homes, and pay Stross from her proceeds;[4] (3) that Centerra never offered to pay Stross for the photographs,[5] (3) that the photographs were removed from the MLS after Murphy was removed as sales manager,[6] (4) that Centerra did not get the photographs from Stross or Murphy,[7] (5) that Centerra's Administrative Director admits she may have scraped the photographs off of Realtor.com, and has no evidence that she obtained the photographs from any other source,[8] (6) that the photographs were all marked with Stross' copyright notices,[9] and (7) that Centerra's use of Stross' photographs continued well after this litigation commenced.[10] Albers' is either

---

[3] Pltf's TAC, ¶ 13; Defs.' Sec. Am. Answer & Third Party Cmplnt., p. 8, ¶ 10; **Exhibit B**, Centerra 000253 (cited in Albers' Report at 2).
[4] Pltf's TAC, ¶ 15; Defs.' Sec. Am. Answer & Third Party Cmplnt., p. 9, ¶ 13.
[5] **Exhibit C**, Excerpts from Centerra 30(b)(6) Dep., 23:5-21 (cited in Albers' Report at 2).
[6] Pltf.'s TAC, ¶ 15; Martin Decl. (Doc. 49-3); ¶ 9.
[7] **Exhibit D**, excerpts from Thompson Dep. 23:6-25:7 (cited in Albers' Report at 2).
[8] *Id*., 22:14-23:19.
[9] Exhibit 1-A to Centerra MSJ (Doc. 49-2).
[10] *See* https://web.archive.org/web/20180718002222/http:/www.centerratx.com/communities/homeDetails.asp?CID=1814&MID=16497 (evidencing Centerra's continued use of Plaintiff's photographs to illustrate the layout of its model homes, as late as July 18, 2018 – more than one year following the filing of Plaintiff's complaint. In contrast to these facts, Albers' erroneously and improperly predicates his opinions on the alleged fact that Centerra stopped using Plaintiff's photographs before suit was even filed. *See* Albers' Rpt. at 7).

unaware of these critical facts, or has simply chosen to ignore them. In either case, it renders his opinion of no assistance to the factfinder. *Bonner*, 259 F.3d at 929-30

Albers also is either unaware of, or ignores, a key provision of the Texas Occupations Code that specifically exempted Murphy from TRELA (and its requirements) while she was working as Centerra's in-house sales manager.[11] This is critical, since the majority of Albers' opinions are based on the assumption that Murphy was subject to TRELA's obligations, and that Stross was vicariously liable for her actions.[12]

Finally, Albers ignores the fact that Stross was performing no statutorily recognized "broker" services when he photographed Centerra's homes.[13] Worse, Albers improperly "concludes" that there mere act of taking photographs and uploading them to the MLS constitutes "brokerage services." Albers Rpt. at 5 ("[Stross] performed additional broker actions by assisting and facilitating … with the uploading of the pictures …"). There is absolutely no support for that "conclusion" in TRELA, or elsewhere.[14]

Although the factual basis of an expert's opinion is generally an issue of credibility rather than admissibility, where – as here – "the expert's analysis is unsupported by the record, exclusion of that analysis is proper, as it can offer no assistance to the jury." *Cole*, 599 F.3d at 865. In accordance with its role as gatekeeper, this Court should exclude Albers' testimony.

C.    **Albers' has Failed to Account for Obvious Alternative Explanations**

Albers also fails to account for ***obvious*** alternative explanations. *See Munoz v. Orr*, 200 F.3d 291, 301 (5th Cor. 2000); *Claar v. Burlington N. R. R.*, 29 F.3d 499, 502-03 & n. 4. (9th Cir.

---

[11] Tex. Occ. Code § 1101.005(6); *Drexel Highlander Ltd. P'ship v. Edelman (In re Edelman)*, Nos. 13-31182-BJH, 13-03078-BJH, 2014 Bankr. LEXIS 2013, at *61 (Bankr. N.D. Tex. May 6, 2014); see also 22 Tex. Admin. Code §§ 535.5(c); 535.34.
[12] *See* Albers Rpt. at 4.
[13] Tex. Occ. Code § 1101.002(1) (the code makes no mention of photography services, or uploading of photographs to a local MLS in its list of activities constituting broker services).
[14] *See* n. 13, *supra*.

1994). He opines that Stross and Murphy should have warned Centerra not to use Stross' photographs without authorization, but fails to consider whether Stross and Murphy reasonably believed that Centerra had all of the information it needed (including the conditions of the license, and payment terms).[15] He also fails to consider whether Stross and Murphy reasonably believed that they were performing no services that subjected them to TRELA or the TREC Rules, because (1) Murphy was working as an in-house sales agent (and was therefore exempted from TRELA),[16] (2) there was no listing agreement between Stross, MSI and Centerra that would have caused Stross to conclude that he was acting as Centerra's "broker,"[17] and (3) Stross was performing no services for Centerra that were statutorily defined as "broker" or "agent" services under TRELA.[18] Albers' failure to consider these obvious alternative explanations taints his report, and renders it of no assistance to the factfinder. Consistent with its role as "gatekeeper," the Court should exclude Albers' testimony as unreliable. *Munoz*, 200 F.3d at 301.

**D.     Albers' Expert Testimony was Generated Solely for the Pending Litigation**

Finally, the credibility of Albers' expert report is tainted by the fact that it was generated solely for the purposes of this litigation, and was not the result of any independent research. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001). Coupled with the fundamental defects described above, Albers' testimony is of no assistance to the factfinder, and should be excluded.

### III.  CONCLUSION

For the foregoing reasons, the Court should exclude Albers' expert testimony.

---

[15] *See* **Exhibit B**, Centerra 000253 (cited in Albers' Report at 2) (email from Murphy to Centerra President Tom Grant explaining terms and conditions for use of photographs).
[16] *See* n. 11, *supra*.
[17] *See* Albers Rpt. at 5, conceding that there was no written listing agreement.
[18] *See* n. 13, *supra*.

Dated this 25th Day of March, 2019

**LAW OFFICE OF BUCK MCKINNEY, PC**

/s/ R. Buck McKinney
R. Buck McKinney
State Bar No. 00784572
408 W. 11th St., Fifth Floor
Austin, Texas 78701
Telephone:  512/236-0150
Fax:  512/444-1879
*mckinney@buckmckinney.com*
ATTORNEY FOR PLAINTIFF ALEXANDER STROSS

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), Plaintiff's counsel conferred with Defendant's counsel on March 6, 2019.  Counsel made a good-faith attempt to resolve the identified issues with Mr. Alber's testimony, but could not reach agreement.

/s/ R. Buck McKinney

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties who have appeared in this action.

/s/ R. Buck McKinney