# EXHIBIT A

EXPERT REPORT

Alexander Stross vs. Centerra Homes of Texas, LLC, et al.

United States District Court
Western District of Texas
Austin Division
Civil Action # 1:17-cv-676-55

Prepared by:

Rick M. Albers
Kuperman, Orr & Albers, P.C.

**Introduction and Materials Reviewed**

I have been retained to offer opinions in the case of Alexander Stross vs. Centerra Homes of Texas, LLC, et al. This report contains my preliminary opinions based on the information provided to me to date. I am providing these opinions based on my knowledge, skill, expertise, education, and experience. I anticipate reviewing additional materials and depositions that may be furnished to me after this date, and I will supplement, alter, or amend my opinions on this case as necessary. In preparing this report I have interviewed representatives of Centerra Homes of Texas, LLC and have reviewed the following items:

**Pleadings**:

- Plaintiffs Second Amended Complaint
- Stross's Rule 12(b)(6) Motion to Dismiss Defendants First Amended Counterclaim for Breach of Fiduciary Duty
- Defendants Response to Plaintiff's Stross's Rule 12(b)(6) Motion to Dismiss
- Defendants' Second Amended Answer, Counterclaim and Third-Party Complaint
- Plaintiffs Reply in Support of Rule 12(b)(6) Motion to Dismiss Centerra's First Amended Counterclaim for Breach of Fiduciary Duty
- Plaintiff's Third Amended Complaint
- Counter Defendant's Answer
- Defendants' Answer to Plaintiff's Third Amended Complaint
- Various other pleadings filed prior to February 28, 2019.

**Depositions**:

- Deposition of Stanley Martin as corporate representative of Austin Board of Realtors (and individually) (Transcript and Exhibits)
- Deposition of Tom Grant, as designated 30 (b) (6) Representative of Centerra Homes of Texas, LLC (Transcript and Exhibits)
- Deposition of Tamela Thompson (Transcript and Exhibits)

**Responses to Requests for Admissions, Interrogatories and Production:**

- Defendant Gene Rowehl Responses to Plaintiff's Requests for Admissions, Interrogatories and Production
- Defendants' Centerra Homes of Texas, LLC Responses to Plaintiff's Requests for Admissions, Interrogatories and Production
- Defendants' Centerra Homes of Texas, LLC Responses to Plaintiff's Second Requests for Interrogatories and Production
- Plaintiff's Responses to Defendants' Second Set of Written Discovery
- Plaintiff's First Amended Response to Defendants' Second Set of Written Discovery

**Discovery and other Documents:**

- Email message from Brittany Murphy to Tom Grant dated January 26, 2015 (Bates numbered: Centerra-000253)
- Email message from Brittany Murphy to Tom Grant dated February 3 2015 (Bates numbered: Centerra-000254)
- Email message from Brittany Murphy to Tom Grant dated February 3 2015 (Bates numbered: Centerra-000255)
- Email message from Brittany Murphy to Tom Grant dated February 10 2015
- Various documents produced by ABOR including, the documents responsive to the subpoena request by Defendants
- Various documents produced in the matter including Bates numbered Centerra-000239-000252
- Photographs of the four homes at issue

**Miscellaneous Documents:**

- ABOR/ACTRIS Multiple Listing Service Rules dated March 2014 ("March 2014 MLS Rules").
- ABOR/ACTRIS Multiple Listing Service Rules dated January 2015 ("January 2015 MLS Rules").

- ABOR/ACTRIS Multiple Listing Service Rules dated May 2015 ("May 2015 MLS Rules").
- Multiple Listing Service ("MLS") data printouts for listings posted under MSI Urban Realty's MLS membership account for the following properties:
  - 107 Antigua Way
  - 201 Antigua Way
  - 203 Antigua Way
  - 411 Bonaire CT
- Certificate of Formation of Murphy and Stross Investments, LLC.
- Texas Real Estate Commission licensee database

**Qualifications**:

A. I am an attorney licensed to practice law in the state of Texas since 1982. I have been Board Certified by the Texas Board of Legal Specialization in the following three areas of Real Estate Law continuously since 1987: (i) Commercial Real Estate Law, (ii) Farm and Ranch Real Estate Law, and (iii) Residential Real Estate Law.

B. I was a Commissioner of the Texas Real Estate Commission from 1993-1997 and Vice Chairman of the Texas Real Estate Commission from 1996 to 1997.

C. I served on the Texas Real Estate Commission Education Standards Committee from its inception in 2012 thru 2018.

D. I am a licensed Real Estate Broker in the state of Texas. I obtained my Real Estate Broker License in 1974.

E. Attached to this report are the following: (i) my resume, and (ii) a list of cases in which I have testified as an expert at trial or by deposition.

**Publications Authored in the Previous 10 Years**

The following non-elective course textbooks required for renewal of Texas real estate licenses published by the Real Estate Center at Texas A&M University in cooperation with the Texas Real Estate Commission:

- Legal Update Part I (Edition 8.0 - 2018) with co-authors
- Legal Update Part II (Edition 8.0 - 2018) with co-authors
- Broker Responsibility (Edition 4.0 - 2019) with co-authors

**Opinions**

### MLS listing creates Principal-Agent relationship

Real estate sales activity in Texas is governed by Chapter 1101 of the Texas Occupations Code (commonly known as the Texas Real Estate License Act, or "TRELA").

Brittany Murphy ("Murphy") was a salesperson sponsored by the broker, Murphy and Stross Investments, LLC, *operating as MSI Urban Realty*. As Murphy's sponsoring broker, MSI Urban Realty was responsible for the actions of Murphy. Alexander Bayonne Stross ("Stross") was the "designated officer" for MSI Urban Realty.

Every business holding a Texas real estate broker license must have a "designated officer" who is an individual holding a Texas real estate broker license. The designated officer, in his/her capacity, is responsible for the actions of the broker entity, and thus in turn is also responsible for the actions of the salespersons sponsored by the broker entity. Section 1101.6011 of TRELA states that a claim against a business entity license holder is also a claim against the broker who is the business entity's designated broker. (*Note that the term "designated officer" was recently changed to "designated broker" -- the two terms are used interchangeably in this report.*) As a result, Stross, MSI Urban Realty and Murphy all have a principal-agent relationship with the same principal.

TREC Rule 535.34 allows an employee of a homebuilder to sell homes without a real estate license, provided certain guidelines are followed. That sales activity is on a "for sale by owner" basis. An owner selling its own house does not need a real estate license. However, Murphy had a Texas real estate license at the time she worked for Centerra Homes of Texas, LLC ("Centerra"). Her license allowed her to post listings on the MLS through the MLS membership of her sponsoring broker, MSI Urban Realty. The mere fact of holding an active license brings the provisions of the Texas Real Estate License Act into play even if the agent's license is not required for the agent's activities as an employee.

One of the downsides of using an unlicensed agent to sell new homes on behalf of a builder is that an unlicensed agent does not have the ability to enter listings into the MLS. Listings may only be entered into the MLS by licensed brokers or by licensed salespersons currently sponsored by licensed brokers. The act of entering a listing into the MLS creates a principal-agent relationship between the broker and the property owner even if there was no prior relationship. With the entry of the listing data, the broker makes representations to the Austin Central Texas Realty Information Service ("ACTRIS"), all members of the MLS, and everyone who views the MLS listing, that the broker is the agent of the property owner. Centerra agreed to the use of the MLS by Murphy in her capacity as a salesperson under the ACTRIS membership of herself and her sponsoring broker.

In addition, the act of listing a home for sale on the MLS meets the statutory definition of "broker" under Texas law. Section 1101.002(1) of TRELA defines "broker" as a person who "…(ii) offers to sell, exchange, purchase, or lease real estate; (iii) negotiates our attempts to negotiate the listing, sale, exchange, purchase, or lease of real estate; (iv) lists or offers, attempts or agrees to list real estate for sale, lease, or exchange…." Thus, Stross

was acting as Centerra's broker subject to the provisions of TRELA merely by listing Centerra's property for sale on the MLS.

A "salesperson" is defined by Section 1101.002(7) of TRELA as "a person who is associated with a licensed broker for the purpose of performing an act described by Subdivision (1) [of Section 1101.002]" (being the same acts that define "broker"). *(Note that the term "salesperson" was in effect in TRELA at the time of the transactions in question. The term has been subsequently changed in TRELA to "sales agent," but the definition has not changed except that "associated with" was replaced with "sponsored by.")* Thus, Murphy was acting as a real estate salesperson subject to the provisions of TRELA by listing Centerra's property for sale on the MLS.

The listing input data from each of the MLS listings for 107 Antigua Way, 201 Antigua Way, 203 Antigua Way, and 411 Bonaire CT show the following:

>   **Listing Office Name**: MSI Urban Realty
>
>   **Listing Agent Full Name**: Brittany Murphy

Both the March 2014 MLS Rules and the January 2015 MLS Rules require that a minimum of one picture/digital image be uploaded as a part of inputting data for a listing. The pictures at issue were uploaded as a part of inputting the data for those listings. Agents routinely provide the pictures to be uploaded as a part of the services to their principals at no cost to the principal.

The pictures at issue were uploaded to the MLS with the representation that MSI Urban Realty (as broker) and Murphy (as salesperson/listing agent) were agents for Centerra. Stross is also an agent of Centerra because he was the designated officer of MSI Urban Realty. He performed additional broker actions by assisting and facilitating MSI Urban Realty and Murphy with the uploading of the pictures and the listings.

Stross represented in his First Amended Complaint that Murphy acted as the listing agent for Centerra. The First Amended Complaint stated: "Stross' brokerage MSI Urban Realty acquired the listings for four Centerra homes under construction in the Overlook – a neighborhood in Rough Hollow which is situated in Lakeway, Texas. MSI Urban's agent Brittany Murphy acted as the listing agent for the properties."

Even though there was no written listing agreement between MSI Urban Realty and Centerra, a principal-agency-relationship was created by the representation made by the actions of uploading the data into the MLS system, the representations made with the uploaded information, and by intending the pictures, claim of listing, and other data be published to others. The uploading of the information into the MLS system was done to offer Centerra's houses for sale (being another action under the statutory definitions of "broker" and "salesperson"). The principal-agency relationship that was created was governed by TRELA and the Rules of the Texas Real Estate Commission ("TREC Rules").

**The Principal-Agency Relationship was a Fiduciary Relationship**

The following sections of the TREC Rules detail the agent's obligations to the principal:

- §531.1 (a)(3) requires
  that the real estate agent place no personal interest above that of the agent's client.

- §535.2 (b) states
  A broker owes the highest fiduciary obligation to the principal.

- §535.156 (a) states
  A license holder's relationship with the license holder's principal is that of a fiduciary.

- §535.156 (b) states
  The license holder must put the interest of the license holder's principal above the license holder's own interest.

Common law has also defined the duties of a fiduciary, which include, but are not limited to duties of: (i) loyalty, (ii) acting in good faith, (iii) acting with integrity of the strictest kind, (iv) honesty, (v) candor, (vi) full disclosure, and (vii) refraining from self-dealing.

The broker entity, the designated officer (also a broker) and the salesperson all have fiduciary obligations to their principal as a part of the principal-agency relationship. As a result, Stross, Murphy and MSI Urban Realty were all required to put the interest of Centerra above their own interest.

**Fiduciary Duty was breached by Stross**

It is my opinion that Stross violated his fiduciary duties to Centerra in a number of ways. The following examples include some, but are not limited to all of Stross' violations:

- Stross violated the fiduciary duty requiring him to act with integrity. It is not of sound and moral principle for an agent to claim that his principal is violating the rights of the agent when the principal is unaware of such rights and the agent has failed to inform the principal of such rights. Stross uploaded the pictures to the MLS in the same manner as other real estate agents who do so in the normal course of business without any restrictions on their principal's use of the pictures. Stross did not inform Centerra that there were any restrictions on the use of the pictures.

- Stross violated the fiduciary duty requiring him to refrain from self-dealing. Stross violated that duty by taking pictures of the houses and uploading them to the MLS and retaining a claim to ownership of the pictures without informing Centerra of that claim, and then filing a lawsuit. Stross had a duty to inform Centerra that the use of the pictures of the interior and exterior of Centerra's houses was limited if Stross intended to assert a claim that Centerra could not use the pictures of its own houses. Stross engaged in self-dealing by not making it clear that Centerra's use of the pictures was limited and then making a demand for payment for use of the

pictures. Strauss then took advantage of Centerra by filing the lawsuit after Centerra stopped using the pictures.

- Stross violated the fiduciary duty requiring him to make full disclosure. A fiduciary who participates in a transaction for the agent's own benefit is required to fully disclose the details of the transaction and the benefit to be received by the agent. Stross claims to have entered into a transaction to take pictures of his principal's houses. However, the terms of the claimed transaction and any restrictions on the use of the pictures were not properly disclosed. Stross (as well as MSI Urban Realty and Murphy) had a duty to disclose any additional terms and restrictions resulting from the claimed transaction concerning the pictures.

- Stross violated the fiduciary duty of loyalty. The duty of loyalty requires the agent not to advance his own interest in profit to the detriment of his principal. Stross filed the lawsuit against Centerra seeking damages for Centerra's use of the pictures without previously informing Centerra that Centerra had no right to use the pictures of Centerra's own houses. It is my understanding that Stross gave no request or demand to Centerra to cease using the pictures. Stross merely sent a copyright infringement letter demanding payment two years after the fact and then filed the lawsuit.

- Stross violated the fiduciary duty of good faith. The duty of good faith encompasses among other things, an honest belief, the absence of malice and the absence of design to defraud or seek unconscionable advantage. Stross' actions of agreeing to take pictures to help sell the homes, listing them on the MLS, and then suing for copyright infringement years later falls well below the duty to act in good faith. It appears Stross uploaded the pictures to the MLS not only as an attempt to sell the houses, but also with design to gain an advantage against his principal if the principal continued to use the pictures of the principal's own houses after the expiration of the listing.

- Stross violated the fiduciary duty requiring him to act honestly and with candor. Stross uploaded the pictures to the MLS in the same manner as other real estate agents who do so in the normal course of business without any restrictions on their principal's use of the pictures. Stross was not open, honest or direct with Centerra and that he did not inform Centerra that there were any restrictions on Centerra's use of the pictures. In my experience, it is standard practice that if an agent or photographer intends to place restrictions on the use of photographs of an owner's home, that a written agreement is entered into setting forth the restrictions. Centerra did not sign any agreement restricting the use of the pictures of its own houses and Centerra was not aware of any restrictions on the use of the pictures.

**Fiduciary Duty was breached by Murphy**

It is my opinion that Murphy violated her fiduciary duties to Centerra and a number of different ways. The following examples include some, but are not limited to all of Murphy's violations.

- Murphy violated the fiduciary duty requiring her to act with integrity. Murphy arranged for the pictures of Centerra's houses to be taken and uploaded to the MLS. The pictures were uploaded to the MLS in the same manner as other real estate agents who do so in the normal course of business without any restrictions on their principal's use of the pictures. Murphy failed to act with integrity by operating in conjunction with Stross to set-up Centerra for claims by Stross of copyright infringement.

- Murphy violated the fiduciary duty to act honestly and with candor. Murphy represented to Centerra in a February 3, 2015 email message that she had just paid her ex husband to photograph the houses. That representation was false if Stross' claims are correct that he was never paid. Murphy further violated the duty to act honestly and with candor by using the false payment representation as an attempt to continue to market the houses so she could receive a commission. After stating she had just paid her husband to photograph the houses, she then stated: "So it would be nice to continue to market them *[the houses]* until the new person gets here."

- Murphy violated the fiduciary duty requiring her to make full disclosure. Murphy facilitated the transaction whereby Stross was to take pictures of Centerra's houses. Centerra believed that it had the right to use the pictures that had been arranged for by Murphy. Murphy failed to disclose to her principal, Centerra, that there was any limitation on the use of the pictures.

- Murphy violated the fiduciary duty of loyalty. The duty of loyalty requires the agent not to advance her own interest or the interest of others to the detriment of her principal. Murphy arranged for her ex husband, Stross to take pictures of Centerra's houses. Murphy put the interest of Stross above that of her principal, Centerra in the picture transaction. That is made clear by the fact that Centerra is a defendant in an action brought by Stross in connection with the pictures.

**Centerra has been damaged by Stross' actions**

Stross demanded payment for a claimed copyright infringement without giving prior notice to Centerra of Stross' claim of rights in connection with the pictures. Stross filed the lawsuit after Centerra was no longer using the pictures. Stross used his position as an agent with fiduciary duties to take advantage of his principal. Centerra has expended time and money to defend itself against Stross' claims, none of which would be necessary but for Stross' and Murphy's violations of their fiduciary duties to Centerra. The expended time and money necessary for Centerra to defend itself against Stross' copyright infringement lawsuit are the damages that Centerra has suffered and continues to suffer from Stross' and Murphy's violations.

**Statement of Compensation**:

I am compensated at the rate of $450.00/hour. I have no financial interest in the outcome of this case.

*[signature]*

Rick M. Albers

F:\RMALBERS\1354 - Centerra\0001 - Stross Lawsuit\Report 2-28-2019.docx

# RICK M. ALBERS

| | |
|---|---|
| **Office Address:** | Kuperman, Orr & Albers, P.C.<br>2500 Bee Cave Road, Building Two, Suite 150<br>Austin, Texas 78746 |
| **Office Telephone:** | (512) 473-4106 |
| **Email:** | ralbers@koalaw.com |
| **Position:** | Shareholder |
| **Department:** | Real Estate |

**Professional Expertise:** Board certified by the Texas Board of Legal Specialization in: (i) Commercial Real Estate Law, (ii) Residential Real Estate Law, and (iii) Farm and Ranch Real Estate Law. Certified in all three areas continuously since 1987.

**Representative Transactions:** Purchase and sale of commercial tracts of raw land, shopping centers, office buildings, apartment complexes, and farms and ranches; subdivision of raw land and development; landlord and tenant representation in shopping centers and other commercial properties. Real estate brokerage and licensing issues.

**Professional Affiliations - Legal:**
- American Bar Association
- State Bar of Texas
- Austin Young Lawyers Association: (Director: 1986-89)
- Austin Bar Association: Real Estate Law Section (Director: 1997-present - President: 2003-2005)
- Texas Board of Legal Specialization Real Estate Law Advisory Commission (Member: 1999-2004 - Chairman: 2002-04)
- Texas Board of Legal Specialization Real Estate Law Exam Commission (Member: 2005-2010 - Chairman: 2010).
- Adjunct Professor, University of Texas School of Law (Fall 2015)

**Professional Affiliations - Real Estate Brokerage:**
- Texas Real Estate Commission (Commissioner: 1993-97 - Vice Chairman: 1996-97)
- Central Texas Commercial Association of Realtors® (Director: 2005-2015 – President: 2008)
- Texas Association of Realtors® (Director: 2010 - 2013)
- Licensed Real Estate Broker
- Texas Real Estate Commission Certified Instructor (2001-present)
- Texas Real Estate Commission Education Standards Advisory Committee (2012 - 2018)

**Professional Affiliations – Title Insurance:**
- Texas Title Insurance Guaranty Association (Director: 2011-present – Secretary/Treasurer 2013-present)

**Professional Recognition:**
- "AV/Preeminent Attorney" rating with Martindale-Hubbell
- *The Best Lawyers in America,* Real Estate Law
- "Texas Super Lawyer," Real Estate, *Law & Politics*
- Life Fellow, Texas Bar Foundation

| | |
|---|---|
| **Education:** | JD-University of Houston College of Law<br>Houston, Texas   August 1979-May 1982 |
| | MBA-University of Houston-Finance<br>Houston, Texas   January 1979-May 1982 |
| | BBA-University of Texas-Real Estate<br>Austin, Texas   August 1972-December 1975 |

RICK M. ALBERS

TESTIMONY OR CONSULTING SERVICES
PROVIDED FOR THE FOLLOWING LAWSUITS:

Walnut-Guadalupe Joint Venture, et al. v. Scottish Rite Bodies, Austin, Texas, et al.; Cause No. 95-13548; in the 53rd Judicial District Court of Travis County, Texas (consultation in connection with termination of earnest money contract)

Christopher M. Searls, et al. v. Clyde Rabb Littlefield; Cause No. 95-02377; in the 53rd Judicial District Court of Travis County, Texas (consultation as to damages due to default under earnest money contract)

Oak Bluff Homeowners Assoc., Inc. and Michael Shofner v. City of Round Rock, First Gibralter Bank, Mike Beneat and Joe Beneat; Cause No. 94-295-C368; in the 368th Judicial District Court of Williamson County, Texas (consultation as to modification of restrictions and enforcement of restrictions)

Gary M. Safady v. Eddie Boykin; Cause No. 21,111-B; in the 104th Judicial District Court of Taylor County, Texas (consultation as to ability of out of state real estate broker to collect a commission)

Bariod Management Company v. James Taylor and Charles N. Schwarz, Jr. v. Grubb & Ellis Company, Frank Onorato and Nick Limperos; Cause No. 96-07328; in the 270th Judicial District Court of Harris County, Texas (testimony as to real estate broker's duties and principal-agency relationships)

Carolyn Logan v. John E. Harris, Steve D. Taylor, Trustee, Guaranty Title & Abstract Co., Peter E. Ferraro and Ford & Ferraro, Attorneys at Law; Cause No. 96-0527; in the 207th Judicial District Court of Hays County, Texas (consultation as to proper manner of drafting documents to create valid lien against homestead)

Weitzman Group v. Investors (consultation as to enforceability of commission agreement)

Circle C Land Corp. v. Phoenix Holdings, Ltd; Cause No. 97-01388; in the 261st Judicial District Court of Travis County, Texas (testimony as to interpretation of contract clauses)

Thomas D. Crowson, M.D.. et al v. Gary Grief, et al; Cause No. _____; in the 201st Judicial District Court of Travis County, Texas (consultation as to interpretation of partnership agreement)

Beseda v. Four D's Partnership v. Vinson & Elkins; Cause No. 96-03138; in the 250th Judicial District Court of Travis County, Texas (testimony as to: (i) enforceability of documents related to development and subdivision of real property, and (ii) representation of multiple clients)

John W. Vaught and Jay C. Vaught v. Mike Killebrew, Brian McCabe and Henry S. Miller Commercial, TCN; Cause No GN-201326; in the 98th Judicial District Court of Travis County,

Texas (testimony as to: (i) Broker's duties of disclosure, (ii) enforceability of oral and written representations, and (iii) Broker acting a principal in transaction)

The Molpus Company d/b/a Woodlands Resource Management Group v. Cook Forestry Products, LLC; Cause No. A03-CA-705-SS; in the United States District Court, Western District of Texas, Austin Division (consultation as to real estate broker duties and enforceability of compensation provisions of management agreement)

1999 Legacy Partners., et al v. Realty Appreciation Corporation et al; Cause No. 04-7645; in the 191st District Court, Dallas County, Texas (consultation as to real estate broker license requirements and activities permissible without a real estate broker's license)

Suzette Gast v. Suleyman Isiyel, Melani Isiyel, Joe Goergen, John Shaw, Robert Moore, and S.G. Billings Real Estate, Inc. D/B/A Coldwell Banker S.G. Billings Realtors; Cause No. GN302910 in the 353rd Judicial District Court of Travis County, Texas (testimony as to: (i) Broker's duties of disclosure, (ii) agent duties, (iii) intermediary relationships, and (iv) seller disclosure requirements)

Bill Devin Hooper, Maria Teresa Hooper and Hooperville, Inc. v. Chicago Title Company, Texas American Title Company, Prudential Alamo Realty, Douglas Curtis, Richard D. Harris, Niccole Bowen, Alton and Ira Lee Haley, and Benito Herrera; Cause No. 2006-CI-13019 in the 45th Judicial District Court of Bexar County, Texas (consultation as to real estate license requirements, licensee duties and liabilities)

Thomas and Betty Jean Gola v. Justin Mabey, LBO Opportunities, LLC., and Joe C. Repa; Cause No. D1-GN-06-003568 in the 261st District Court of Travis County, Texas (consultation as to broker duties under the Texas Real Estate Licensing Act)

Marshall Hess, Stuart Smith, David Dunson, and Terry Gwin v. Highland Capital Management, L.P., Davis Deadman, James Dondero, Nexbank Securities, Inc, and Strand Advisors, Cause No. 06-15900 in the County Court at Law No. 3 of Dallas County, Texas (consultation and expert opinion as to actions requiring licensure under the Texas Real Estate Licensing Act)

Texas Real Estate Commission v. Mark Steven Bowles, Texas Real Estate Broker, License Number 451925; State Office of Administrative Hearings Docket No. 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.REC (consultation and expert opinion as to broker duties under the Texas Real Estate Licensing Act)

Bandera Title Company v. Rodney P. Bridgers v. Travis James Living Trust, J. Earle Freeman, III, Trustee, J. Earl Freeman, III, Individually v. Gregory Ruhnke and 5 Star Country Properties, LLC; Cause No. CV-10-326 in the 216th Judicial District Court of Bandera County, Texas (consultation and expert opinion as to misrepresentations made and enforceability of contract for the sale of farm and ranch land)

Maida Development, LLC vs. Tarantino Properties, Inc., Anthony Joseph Tarantino and Matthew Pohl; Cause No. D-l-GN-11-002704 in the 20lst Judicial District Court, Travis County, Texas (consultation as to broker duties under the Texas Real Estate Licensing Act)